# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHELLY A. FULKERSON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NANCY A. BERRYHILL, )<br>Acting Commissioner of )<br>Social Security, )<br>)<br>Defendant. ) | Case No. CIV-16-968-CG |

## OPINION AND ORDER

Plaintiff Shelly A. Fulkerson brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. The parties have consented to the jurisdiction of a United States Magistrate Judge. Upon review of the administrative record (Doc. No. 11, hereinafter "R.__"),[1] and the arguments and authorities submitted by the parties, the Court reverses the Commissioner's decision and remands the case for further proceedings.

## PROCEDURAL HISTORY

Plaintiff protectively filed her DIB application on October 29, 2012, alleging a disability onset date of October 16, 2011. R. 21, 160-61, 213. Following denial of her

---

[1] With the exception of the administrative record, references to the parties' filings use the page numbers assigned by the Court's electronic filing system.

application initially and on reconsideration, a hearing was held before an Administrative Law Judge ("ALJ") on December 4, 2014. R. 21, 36-59. In addition to Plaintiff, a vocational expert ("VE") testified at the hearing. *See* R. 21, 36, 39, 49-56. The ALJ issued an unfavorable decision on March 2, 2015. R. 21-31. The SSA Appeals Council denied Plaintiff's request for review, making the ALJ's unfavorable decision the final decision of the Commissioner. R. 1-4; *see also* 20 C.F.R. § 404.981. This action for judicial review followed.

## ADMINISTRATIVE DECISION

As relevant here, a person is "disabled" within the meaning of the Social Security Act if he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Commissioner uses a five-step sequential evaluation process to determine entitlement to disability benefits. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. § 404.1520. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 16, 2011, the alleged onset date. R. 23. At step two, the ALJ determined that Plaintiff had the severe impairments of: degenerative arthritis of the left knee; status post closed fracture of the left ankle and heel (with residual pain); and joint disorder of the right wrist. R. 23-24. At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 25.

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of her medically determinable impairments. R. 25-29; *see* 20 C.F.R. § 404.1520(a)(4)(iv). The ALJ found that Plaintiff has the RFC to perform light work, subject to the following nonexertional limitations: "[Plaintiff] can only frequently handle and finger." R. 25. In light of this finding and the testimony of a VE, the ALJ determined that Plaintiff was capable of performing her past relevant work as a secretary. R. 29-30.

The ALJ alternatively considered what the result would be if it were assumed that Plaintiff could not return to her past relevant work and the ALJ proceeded to step five of the sequential evaluation. R. 30-31. The ALJ determined that, in view of Plaintiff's age, education, work experience, and RFC, there were jobs existing in significant numbers in the national economy that Plaintiff could perform. Taking into consideration the hearing testimony of the VE regarding the degree of erosion to the unskilled light occupational base caused by Plaintiff's additional limitations, the ALJ concluded that Plaintiff could perform light unskilled occupations such as office helper, laundry folder, and assembler of small products II, all of which offer jobs that exist in significant numbers in the national economy. R. 30-31. The ALJ ultimately found that Plaintiff had not been under a disability, as defined in the Social Security Act, from October 16, 2011, through the date of the decision. R. 31.

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th

Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence "that may undercut or detract from the ALJ's findings," "to determine if the substantiality test has been met." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While a reviewing court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

ANALYSIS

In this appeal, Plaintiff challenges (1) the ALJ's treatment of nonsevere impairments in the RFC assessment, and (2) the ALJ's evaluation of the treating-source opinion. The Court finds that the latter claim of error requires reversal.

*A. The ALJ Properly Considered Nonsevere Impairments in the RFC Analysis*

In assessing a claimant's RFC, an ALJ must "consider the combined effect of *all* medically determinable impairments, whether severe or not." *Wells v. Colvin*, 727 F.3d 1061, 1069 (10th Cir. 2013); *see* 20 C.F.R. § 404.1545(a)(2). At step two of the sequential analysis, the ALJ found both severe and nonsevere impairments. *See* R. 23-24. Specifically, the ALJ determined that Plaintiff's nonsevere impairments included "major

4

depressive disorder (recurrent) and anxiety disorder (mild)." R. 24. Plaintiff asserts that, in contravention to regulatory directive, the ALJ failed to take these nonsevere medically determinable mental impairments into account when assessing her RFC. *See* Pl.'s Br. (Doc. No. 13) at 8-13; 20 C.F.R. § 404.1545(a)(2). Plaintiff's argument is unavailing.

Plaintiff contends that the ALJ's treatment of her nonsevere mental impairments is "identical to the faulty analysis noted and discussed in *Wells*." Pl.'s Br. at 12. In *Wells*, the ALJ determined at step two that the Plaintiff's mental impairments were not severe and stated that "these findings do not result in further limitations in work-related functions in the RFC assessment below." *Wells*, 727 F.3d at 1069 (alterations and internal quotation marks omitted). Noting that this statement "suggests that the ALJ may have relied on his step-two findings to conclude that [the claimant] had no limitation based on her mental impairments," the Tenth Circuit held that "the Commissioner's regulations demand a more thorough analysis" at step four. *Id.* at 1069, 71.

The Court disagrees that the ALJ's discussion in this case reflects the type of conflation of the step-two and step-four analyses criticized in *Wells*. Here, the ALJ explicitly stated at step two that the limitations identified "are not a residual functional capacity assessment," that "[t]he mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment," and that "the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis." R. 24. Further, the ALJ's analysis of Plaintiff's RFC reflects his consideration of Plaintiff's nonsevere impairments. The ALJ references Plaintiff's testimony that "her impairments

5

have left her depressed" and discusses the opinions of state-agency psychological consultants regarding Plaintiff's mental impairments, stating:

> The State agency psychological consultants who reviewed the claimant's file both concluded the claimant had no severe mental medically determinable impairments (Exhibit 2A; 4A). Randy Cochran, Psy.D., opined the claimant had no restrictions or episodes or decompensation (Exhibit 2A/7), while CCG, Ph.D., opined the claimant did have mild restrictions in maintaining social functioning (Exhibit 4A/10). Great weight is given to the State agency examiners' opinion the claimant had no severe mental medically determinable impairment. However, the undersigned finds that new evidence submitted at the hearing level supports finding the claimant suffers mild restriction of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, with no episodes of decompensation of extended duration.

R. 26, 28. Accordingly, Plaintiff has not shown that the ALJ failed to "conduct[] a mental RFC assessment separate from the non-severity determination made at step two." *Suttles v. Colvin*, 543 F. App'x 824, 826 (10th Cir. 2013) (finding ALJ conducted proper RFC analysis and distinguishing *Wells* where "the ALJ did not make any ancillary statement . . . affirmatively suggesting an improper conflation of the step-two and step-four assessments" and "[a]t step four . . . discussed evidence relating to [the nonsevere impairment] and then pointedly omitted any limitation associated with that [nonsevere] impairment on the RFC"); *cf. Alvey v. Colvin*, 536 F. App'x 792, 794 (10th Cir. 2013) (finding that ALJ failed to adequately consider plaintiff's nonsevere mental impairments at step four when ALJ made ancillary statement suggesting conflation of the step-two and step-four findings and "did not engage in any analysis" of mental functions or impairments, but holding the error harmless "[b]ecause the evidence in this case does not support assessing any functional limitations from mental impairments").

Moreover, having analyzed the nonsevere mental impairments at step two, the ALJ explicitly recognized his obligation to "consider all of the claimant's impairments, including impairments that are not severe" when determining Plaintiff's RFC, R. 22, and averred that he did consider "all symptoms," R. 25. In such circumstances, the Court's "practice is to take the ALJ at his word." *Wall*, 561 F.3d at 1070 (alteration and internal quotation marks omitted).

For these reasons, Plaintiff has not shown that the ALJ failed to consider her nonsevere impairments in the RFC assessment or that such analysis was tainted by application of an incorrect legal standard.

B. *The ALJ Failed to Properly Weigh the Treating-Source Opinion*

Plaintiff asserts four interrelated arguments regarding the medical opinion of Plaintiff's treating physician, Vytautas M. Ringus, MD: (1) the ALJ failed to state what weight he accorded Dr. Ringus' opinion regarding Plaintiff's "expected absenteeism or the need for unscheduled breaks," Pl.'s Br. at 15-16, 22; (2) "the ALJ erred by . . . failing to identify what weight he assigned Dr. Ringus' entire opinion," *id.* at 22; (3) "the ALJ erred by giving a portion of Dr. Ringus' [opinion] little weight," *id.* at 17; and (4) the ALJ erred "[b]y giving more weight to Dr. Pons', the non-examining, non-treating State agency medical consultant, opinion over that of Dr. Ringus," *id.* at 21. The Court finds reversible error on the first of these alleged errors and, therefore, need not address the remaining claims. *See Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006); *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

1. The Relevant Record and the Written Decision

The record reflects that Dr. Ringus treated the Plaintiff on numerous occasions beginning in October 2011. *See* R. 281-319 (Ex. 1F), 320-25 (Ex. 2F), 338-42 (Ex. 5F), 343-62 (Ex. 6F), 365-77 (Ex. 8F). The ALJ identified Dr. Ringus as Plaintiff's treating physician, and the Commissioner does not dispute this designation. *See* R. 27; Def.'s Br. (Doc. No. 18) at 8-14.

On August 13, 2014, Dr. Ringus completed a form titled "Medical Assessment to Do Work Related Physical Activities." *See* R. 361-62. In this document, Dr. Ringus opined that Plaintiff: required the flexibility to change positions frequently; could never lift or carry more than 50 pounds, rarely lift or carry between 11 and 50 pounds, and occasionally lift up to 10 pounds; was limited in repetitive actions involving pushing, pulling, or fine manipulation; required "frequent" (defined as 2.5 to 5.5 hours of the eight-hour workday) "unscheduled interruptions of work routine to leave the work station to alleviate the pain during the day (e.g., to . . . apply ice or heat to affected area, elevate feet)"; and would likely miss work on a frequent basis due to exacerbations of pain. R. 361-62.

The ALJ's discussed Dr. Ringus' opinions as follows:

The record contains a medical opinion from Dr. Ringus (Exhibit 6F/19-20). In a medical source statement from August 2014, he opined the claimant could only occasionally lift 10 pounds and up to 50 pounds rarely. He also opined she could only rarely carry up to 50 pounds. He also indicated limits on bilateral fine manipulation, pushing, and pulling (Exhibit 6F/20). Dr. Ringus placed no standing or sitting limitations on the claimant (Exhibit 6F/20). Certain aspects of the doctor's opinion are in fact consistent with the residual functional capacity determined in this decision. While Dr. Ringus is a treating physician/surgeon with an extensive history of seeing and

8

providing care to the claimant, his opinion that she possess[es] no sitting or standing limitations is inconsistent with findings from the record documenting the claimant's injury to her left foot. Based on the medical record documenting the claimant's status post left foot fracture and degenerative arthritis in her left knee, the undersigned finds the claimant is limited to standing and sitting a total of six hours per eight-hour workday. Little weight is given to his opinion the claimant needs the flexibility to change positions frequently (Exhibit 6F/19). This opinion is vague and Dr. Ringus did not offer any explanation for why the claimant would need to change positions.

R. 27.

### 2. The Treating Physician Rule

Medical opinions of treating sources are generally given substantial deference. *See* 20 C.F.R. § 404.1527(a)(2), (c)(2); *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004). A treating-source opinion is entitled to controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see Watkins*, 350 F.3d at 1300 (applying SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996)). If, however, the ALJ finds that the opinion is deficient in either respect, the ALJ must resolve a second, distinct assessment—i.e., what lesser weight to afford the opinion and why. *See Watkins*, 350 F.3d at 1300-01; *Langley*, 373 F.3d at 1119. This inquiry requires the ALJ to weigh the treating source opinion using the regulatory factors prescribed in 20 C.F.R. § 404.1527(c)(2)-(6):

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered;

and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1301 (internal quotation marks omitted); *see* 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ must both consider the factors and provide "good reasons" for assigning the weight he ultimately affords the opinion. 20 C.F.R. § 404.1527(c)(2). If the ALJ chooses to "reject[] the opinion completely, he must then give specific, legitimate reasons for doing so." *Watkins*, 350 F.3d at 1301 (internal quotation marks omitted).

3. Discussion

Plaintiff objects that the ALJ failed to assign weight to portions of Dr. Ringus' opinion, pointing specifically to the portion declaring Plaintiff's need for frequent, unscheduled breaks and absenteeism. *See* Pl.'s Br. at 22; R. 362.

The ALJ's discussion of Dr. Ringus' opinion fails to mention these limitations. R. 27. The ALJ does not explain why this portion of the opinion is not entitled to controlling weight or identify what lesser weight, if any, he assigned to it. Nor does the ALJ provide the "specific, legitimate reasons" necessary to support a complete rejection of the opinion. *Watkins*, 350 F.3d at 1301 (internal quotation marks omitted). This was error. *See id.*; 20 C.F.R. § 404.1527(c)(2); SSR 96-2p, 1996 WL 374188, at *5; *see also Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) ("[W]hen, as here, an ALJ does not provide any explanation for rejecting medical evidence, we cannot meaningfully review the ALJ's determination."); *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) ("In the absence of ALJ findings supported by specific weighing of the evidence, we cannot assess

whether relevant evidence adequately supports the ALJ's conclusion . . . and whether he applied the correct legal standards to arrive at that conclusion.").

The Commissioner contends that the ALJ "meant to accord little weight to these limitations because they were vague" and that reversal is unwarranted because these limitations were not inconsistent with Plaintiff's RFC. Def.'s Br. at 8-9. As to the Commissioner's suggestion of what the ALJ meant, the inferred finding of vagueness is not apparent in the ALJ's decision. The Court cannot, without engaging in improper conjecture and post hoc reasoning, assign weight to a medical opinion on the ALJ's behalf or supply a reason for rejecting such an opinion. *See Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) ("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.").

Moreover, the ALJ's failure to consider or adopt the referenced opinion of Dr. Ringus was material to the ALJ's finding of nondisability. The ALJ's RFC determination omits the limitations referenced in Dr. Ringus' opinion. *Compare* R. 25 (RFC determination of ALJ that Plaintiff can perform light work with only frequent handling and fingering), *with* R. 362 (opinion of Dr. Ringus that Plaintiff requires frequent absences from work and needs several hours of unscheduled work interruptions each day to alleviate pain by such means as lying down, applying ice, and elevating her feet). At the administrative hearing, the ALJ posed a hypothetical to the VE that roughly approximated the limitations sponsored by Dr. Ringus, namely an individual who was limited to only five hours of sitting, standing, and walking per day and who would, after the expiration of the

five hours, need to elevate and ice her leg for two to three hours. *See* R. 56. The VE testified that an individual subject to these limitations would be unable to work. *See* R. 56.

Further, the ALJ discounted Plaintiff's testimony regarding relevant symptoms by citing a supposed lack of confirming medical opinion. Plaintiff testified at the hearing that she was unable to work full time because, after five hours, she would need to lie on her back with her foot elevated and iced. *See* R. 44, 57. In choosing not to credit this testimony, the ALJ stated: "[W]hile the claimant testified during the hearing regarding the need to elevate her foot every day, the medical record lacks any suggestion or recommendation of it." R. 29. To the contrary, Plaintiff's testimony is supported by the referenced opinion of Dr. Ringus. *See* R. 362.

Because inclusion of a requirement for frequent work interruptions would effectively prevent Plaintiff from performing any of the occupations identified by the ALJ at steps four and five, the ALJ's error in evaluating Dr. Ringus' opinions was prejudicial to Plaintiff and cannot be considered harmless. *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004); *accord Caudillo v. Colvin*, No. CIV-15-761-M, 2016 WL 4531150, at *7 (W.D. Okla. Aug. 9, 2016) (R. & R.) (finding that ALJ's error was not harmless because VE had testified that frequent breaks to elevate legs would "prevent competitive employment"), *adopted*, 2016 WL 4532338 (W.D. Okla. Aug. 29, 2016).

## CONCLUSION

The decision of the Commissioner is reversed and the case remanded for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g). A separate judgment shall be entered.

ENTERED this 26th day of March, 2018.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE